465 A.2d 669

**COMMONWEALTH of Pennsylvania**

v.

**Hiram DAVIS, Appellant.**

Superior Court of Pennsylvania.

Submitted May 20, 1983.

Filed Sept. 9, 1983.

Petition for Allowance of Appeal Denied Feb. 2, 1984.

**2.** We note that under the language of the Virginia decree, *supra* note 1, appellant may seek alimony there.

508

Robert B. Mozenter, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, BROSKY and BECK, JJ.

BROSKY, Judge:

This is a direct appeal from judgment of sentence imposed subsequent to convictions for knowing and intentional possession and delivery of a controlled substance. Appellant raises two issues for our review. First, he argues that the evidence was insufficient. Second, he contends that he was denied his Sixth Amendment right to effective assistance of counsel due to the lack of a pre-trial motion for the discovery of the identity and testimony of an informant. We find no merit in either of these arguments and, accordingly, affirm.

## Sufficiency of Evidence

■ The opinion of the trial court accurately summarizes the evidence in this case.

Paul S. James, narcotic agent for the Department of Justice, Bureau of Drug Control, testified that on March 10, 1980, he and his partner, Officer Steven Richardson met with an informant with the code name, "211–80" at Valley Forge, Pennsylvania. After the meeting, the informant made a telephone call in his presence. That as a result of that phone conversation they proceeded to South Philadelphia to the 2700 block of Federal Street with the informant, "211–80," in an unmarked car. That once at the 2700 block of Federal Street he parked his car and a green Camaro pulled directly behind him and parked. Agent James testified he informed the informant that he wanted to purchase five bundles of heroin. The informant spoke with the defendant Hiram Davis, known to him as "Pete," and he paid him One Hundred Eighty Dollars ($180.00) in unmarked bills to make the purchase. He stated that he did not mark the bills because the

investigation was ongoing and they did not plan to make an arrest at that time. He then instructed "211–80" to purchase three bundles instead of five bundles of heroin. That after the informant handed the defendant the money he observed the defendant put something in his right hand. The informant returned with three bundles of suspected heroin. That the suspected heroin (three bundles consisting of twelve glassine packets) was turned over to Agent Richardson as evidence. On April 3, 1980, he again met the informant, "211–80," at Valley Forge, Pennsylvania and they drove to Philadelphia. He and the informant met with defendant Hiram Davis again to make a second purchase of heroin. That the informant purchased five bundles of heroin, but the five bundles contained only eighteen packets instead of twenty. That he observed the defendant's vehicle coming down the street and he proceeded to "flag him down." Agent James testified that he told the defendant he had only eighteen packets instead of twenty (20), and the defendant explained that the informant had "shortchanged" him. He testified that the defendant then stated, "from now on, you can deal directly with me." (N/T Vol. 1 p. 45). He then handed the agent a piece of paper with "Pete" and the telephone number "755–5622" on it. That after his discussion with the defendant, he and Agent Richardson met for a debriefing session. At that time he extracted three more packets from the informant and place [sic] them with the other evidence. These items were placed in an evidence envelope and given to agent Richardson. He testified that on May 22, 1980, at approximately 9:30 A.M. he placed a call to the phone number he received from the defendant. That as a result of the phone call he had a meeting with the defendant at 10:30 A.M. and purchased four bundles of heroin containing sixteen packets. That the bundles were given to agent Steven Richardson.

The Commonwealth's next witness was agent Steven Richardson who acted as a back-up for agent James. He testified that on the dates of March 10, April 3rd, and

May 22, 1980, he received the drug purchase from agent James. That the evidence was marked, placed on a property receipt and transported to the Philadelphia Crime Lab. That he placed the purchases in a small white envelope and placed it in a larger envelope with the time, date and amount of the purchase on it with his signature, and he identified the same in Court.

The Commonwealth's next witness was Chemist Michael Brister of the Philadelphia Police Department. After being qualified as an expert he testified that his duty is to perform analysis of alleged controlled substances. That on March 12, 1980, he picked six out of the twelve packets at random for his analysis of the March 10th, alleged drug transaction. That he found the six glazed packets contained heroin, quinine and nonreducing sugar, with a white powder ranging from 112 milligrams to 170 milligrams. That after the analysis he sealed them with red evidence tape.

The Commonwealth then called Chemist Charles Bracken of the Philadelphia Police Department. After being qualified as an expert, he testified that he analyzed Exhibit C–5, which contained the bundles from the alleged drug transaction of April 3, 1980, submitted to him by Agent Richardson on April 16, 1980. He testified that he received five bundles containing twenty packets and one isolated packet all of which contained a white powder. That he took a packet from each bundle, weighed the contents of each packet, and performed a series of tests involving chromogenic agents. That he analyzed six packets; one from each bundle and the isolated packet. As a result of the test performed Mr. Bracken concluded that the packets contained heroin, quinine and reducing sugar.

The Commonwealth's final witness was Joseph Szarka, a Chemist with the Philadelphia Police Department. ... Mr. Szarka testified that on May 22, 1980 an envelope (Exhibit C–9) was brought to the Lab and it was taken in as evidence. It was marked as Lab Number 50158 and

deposited in bin # 10 which only he had a key. That on May 27, 1980, he took the envelope out of his bin and analyzed it. That he took one packet from each of the four bundles and performed various tests, among them a gas chromatography analysis. He concluded that the packets contained heroin, quinine and a reducing sugar. . . .

The Commonwealth's evidence showed that the defendant made three sales to Agent James and/or his paid informant "211–80" on three different dates. A chemical analysis of these substances was 'proof positive' that the packets contained heroin laced with other additives. The chain of custody was sufficient to show that the same bundles sold by the defendant were the same bundles introduced into evidence at trial.

The trial court also stated correctly the standard to be applied to insufficiency of evidence issues.

In determining whether sufficient evidence exists to sustain a conviction, this court must accept as true all the evidence and reasonable inferences therefrom upon which, if believed, the trier of fact could have based its verdict. *Commonwealth v. Coccioletti* [493 Pa. 103 at 107], 425 A.2d 387, 389 (1980); *Commonwealth v. Stockard*, 489 Pa. 209, 212–213 [413 A.2d 1088 at 1090] (1980). *Commonwealth v. Marcocelli* [271 Pa.Super. 411], 413. A.2d 732 (1980). The court must view the evidence in the light most favorable to the Commonwealth. *Commonwealth v. Davis* [491 Pa. 363 at 369], 421 [A.2d] 179, 182 (1980).

In light of the above, we have no hesitation in agreeing with the trial court that, "Here, the evidence produced at trial was sufficient to establish that defendant violated the Controlled Substance, Drug, Device and Cosmetic Act by possessing and delivering heroin."

## Informant Disclosure

■ Appellant argues that his trial counsel afforded him ineffective assistance of counsel by not making a pre-trial

motion for the discovery of the identity and testimony of the informant. In *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967), the Supreme Court of this Commonwealth chose to approve of certain language appearing in the United States Supreme Court case of *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).[1]

■ Writing for the Pennsylvania Supreme Court, Justice Roberts first adopted the general proposition that, under certain circumstances, the informant's identity must be disclosed.

A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

Justice Roberts also adopted the general standard by which these matters were to be decided.

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Commonwealth v. Carter*, supra, 427 Pa. at 59, 233 A.2d at 287, quoting *Roviaro v. U.S.*, supra, 353 U.S. at 60–2, 77 S.Ct. at 628–9.

We find that weighing the facts of this case results in nondisclosure. This conclusion is reached because no con-

---

**1.** *Roviaro* had been decided on federal law, rather than on constitutional grounds. As such, it was not binding on state courts.

vincing argument is presented as to what defenses might have been aided by the informant's availability.

In appellant's brief "the possible significance of the informer's testimony" is detailed.

The informant's value would have rested upon his ability to testify as to his, the informant's, use of heroin, his ability to testify as to who were the other individuals present at the March 10th meeting, and trial counsel's ability to examine the informant on his character for truth and veracity.

Furthermore, the informant would have been the only witness to the transaction which allegedly occurred on March 10, 1980....

Finally, to have had a pre-trial motion for disclosure would have likely resulted in at least an in-camera hearing and cross-examination of said informant, allowing Appellant the ability to confront this witness and to refute this informant's incriminating testimony.

We fail to see how any of the elements could have been "helpful to the defense." The informant's use of heroin and the identity of the other individuals present at the meeting are not tied to any theory of defense. Also, since the informant did not testify at trial, there was no point in examining him on "his character for truth and veracity." Similarly, there was no "incriminating testimony" by informant to "refute."

Finally, as the facts outlined in the first section make clear, the informant was not "the only witness" to the March 10 transaction.

As presented to us on appeal this case is distinguishable from those cases in which the information to be obtained from the defendant was linked to a specific defense theory. In *Carter* the defense sought to present a defense of mistaken identity. Also, in *Commonwealth v. Pritchett*, 225 Pa.Super. 401, 312 A.2d 434 (1973), the informant had potential relevance to an entrapment defense. Similarly, in *Commonwealth v. Bradshaw*, 238 Pa.Super. 22, 364 A.2d

702 (1975) (Spaeth, J., dissenting) the informant might have been helpful to a specific denial defense.

In the case before us, no such utility of the informant to a theory of defense is put forth. "A mere allegation that the informant's testimony might be helpful does not suffice." *Commonwealth v. Pritchett*, supra, 225 Pa.Super. at 407, 312 A.2d at 438.

In this connection, it should be made clear what it is that we find absent here. In coming to a resolution of this issue we have kept in mind the following language in *Pritchett*.

> However, the defendant cannot be expected to predict exactly what the informant would say on the stand. Rather, in keeping with *Roviaro* and *Carter*, "all the defendant must show is a reasonable possibility that the anonymous informer could give evidence that would exonerate him." *Price v. Superior Court*, 1 Cal.3d 836, 83 Cal.Rptr. 369, 463 P.2d 721 (1970).

*Commonwealth v. Pritchett, Id.* There is a point between "a mere allegation that the informant's testimony might be helpful" and predicting "exactly what the informant would say on the stand." The former asks too little of defendant and the latter too much. That point between the two—constituting what defendant can be asked to reasonably suggest is a nexus between a defense theory and the informant's potential helpfulness in establishing that defense. That is the essential element that is totally lacking in appellant's argument.

Thus, had counsel sought pre-trial discovery relating to the informant, he would have had to present a defense theory which might plausibly be aided by the informant.

> Requiring a defendant who seeks disclosure before trial to indicate in some detail his possible defenses does not violate his constitutional right to remain silent as guaranteed by the Fifth and Fourteenth Amendments.

*Commonwealth v. Pritchett*, supra, 225 Pa.Super. at 410–11, 312 A.2d at 439.

Had trial counsel presented no more convincing an argument as to the usefulness of the informant to the defense than has been presented on appeal, we have no doubt that the discovery motion would not have been granted.[2]

The discovery motion having no arguable merit, counsel will not be found ineffective for not making it. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977).

Judgment of sentence is affirmed.

**2.** It is not the proper function of this court to devise defense theories for appellant that would have made informant's identity and testimony "helpful." We are bound to decide this case on the arguments presented by appellant. These arguments, as we have noted, are unpersuasive.