660 A.2d 51

COMMONWEALTH of Pennsylvania,

v.

Mark A. HERRICK, Sr., Appellant.

Superior Court of Pennsylvania.

Argued Jan. 26, 1995.

Filed April 25, 1995.

414

James A. Zurick, Shamokin, for appellant.

Gregory A. Stuck, Asst. Dist. Atty., Sunbury, for Com., appellee.

Before WIEAND, OLSZEWSKI and HOFFMAN, JJ.

OLSZEWSKI, Judge:

On January 22, 1992, James Kerstetter, a police informant, went on a "buy and bust" operation for the Northumberland Police Department. He was strip-searched, provided with $180.00, and sent to the home of appellant, Mark Herrick. He came out of the house approximately ten minutes later with two one-gram bags of cocaine. Kerstetter later testified that he bought the drugs from Robert Sheets while sitting at appellant's kitchen table. N.T. 5/21/93 at 18, 20. Appellant was also sitting at the table the entire time. Afterwards, both appellant and Sheets telephoned Kerstetter, asking him if he wanted to purchase more drugs. *Id.* at 21. Kerstetter went

through the same routine the next day, this time exchanging $270.00 of Northumberland County funds for three and one-half grams of cocaine.

Appellant was convicted of two counts of conspiracy to deliver a controlled substance [1] for which he was sentenced to 24–to–60 months incarceration on one count and 6–to–36 months incarceration on the other, to be served consecutively. He now raises the following three issues on appeal: The evidence was insufficient to find him guilty of conspiracy beyond a reasonable doubt; the Commonwealth did not sustain its burden to prove beyond a reasonable doubt that he entered into more than one conspiracy; and the trial court impermissibly abrogated his right to confront witnesses by denying him access to Kerstetter's pre-sentence report for discovery and/or impeachment purposes.

## I.

■ In reviewing sufficiency of the evidence claims, our standard of review is well settled:

[W]e must review the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. [citation omitted]. The credibility of witnesses and the weight to be accorded the evidence are matters within the province of the trier of fact, the fact finder is free to believe all, some or none of the evidence. (citation omitted).

*Commonwealth v. Hill,* 427 Pa.Super. 440, 442, 629 A.2d 949, 950 (1993) (quoting *Commonwealth v. Taylor,* 324 Pa.Super. 420, 424–425, 471 A.2d 1228, 1229–1230 (1984)), *allocatur denied,* 538 Pa. 609, 645 A.2d 1313 (1994); *see also Commonwealth v. Thompson,* 538 Pa. 297, 648 A.2d 315 (1994); *Commonwealth v. Lanager,* 360 Pa.Super. 578, 521 A.2d 53 (1987). Appellant argues that Kerstetter's testimony was incredible. Under this standard of review, however, we will not revisit the

1. P.C.C. § 903, Act 64 § 13(A)(30).

trier of fact's credibility determinations. *Commonwealth v. Rhone*, 422 Pa.Super. 521, 619 A.2d 1080, *allocatur denied*, 534 Pa. 653, 627 A.2d 731 (1993).

■ Appellant also claims that he was nothing more than a bystander to the transaction between Sheets and Kerstetter. We agree that no bright-line test exists for establishing a case of conspiratorial agreement. *Commonwealth v. Mercado*, 420 Pa.Super. 588, 595, 617 A.2d 342, 346 (1992) (per Hoffman, J., with one judge concurring in the result and one judge dissenting). Reading the evidence and all its reasonable inferences in the light most favorable to the Commonwealth, however, we find that appellant was a conspirator in the sale of the cocaine.

"The essence of a criminal conspiracy is the agreement to perform an unlawful act." *Commonwealth v. Eddowes*, 397 Pa.Super. 551, 558, 580 A.2d 769, 773 (1990) (citations omitted), *allocatur denied*, 529 Pa. 631, 600 A.2d 951 (1991). Here, appellant knew Sheets, knew the crime was being committed, and was immediately present during its commission, which took place in his own home. Under such circumstances, the fact finder was free to infer that a conspiracy had been committed. *Commonwealth v. Azim*, 313 Pa.Super. 310, 459 A.2d 1244 (1983). "By its very nature, the crime of conspiracy is frequently not susceptible to proof except by circumstantial evidence." *Id.* at 314, 459 A.2d at 1246 (quoting *Commonwealth v. Volk*, 298 Pa.Super. 294, 300, 444 A.2d 1182, 1185 (1982) (citations omitted)).

## II.

Appellant further maintains that the evidence could not support two counts of conspiracy, as the two sales to Kerstetter were part of only one conspiracy with multiple criminal objectives. Appellant's brief at 10–11. In support, appellant cites to 18 Pa.C.S.A. § 903(c)[2] and *Commonwealth v. Lore*,

2. § 903. Criminal conspiracy

\*   \*   \*   \*   \*   \*

(c) **Conspiracy with multiple criminal objectives.**—If a person conspires to commit a number of crimes, he is guilty of only one conspiracy

338 Pa.Super. 42, 487 A.2d 841 (1984). In *Lore*, appellant's boyfriend shot and killed John McNulty. Appellant and two friends assisted the shooter in concealing and/or destroying all evidence of the murder, including the corpse. To this end, the conspirators dismembered the body and carried the parts in trash bags to the Susquehanna River, where they disposed of the remains. We held in *Lore* that both the conspiracy to abuse a corpse and the conspiracy to hinder apprehension or prosecution were part of one common plan to dispose of the evidence in order to achieve the conspirator's goal of avoiding arrest. *Id.* at 66–69, 487 A.2d at 854–855.

In support of our holding in *Lore*, we stated the following principle:

A single, continuing conspiracy is demonstrated where the evidence proves that the essential feature of the existing conspiracy was a common plan or scheme to achieve a common, single, comprehensive goal.... A single, continuing conspiracy may contemplate a series of offenses, or be comprised of a series of steps in the formation of a larger, general conspiracy....

Therefore, where the evidence at trial is sufficient for the jury to infer that the essential features of the existing conspiracy were a common plan or scheme to achieve a common, single, comprehensive goal or end, then the conclusion that the conspiracy was a single, continuing conspiracy is justified.

*Id.* at 68, 487 A.2d at 855 (citations omitted) (quoting *United States v. Continental Group, Inc.*, 456 F.Supp. 704, 716 (E.D.Pa.1978), *aff'd*, 603 F.2d 444 (3rd Cir.1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980)). Each of the acts committed by the defendant in *Lore* was aimed at destroying the victim's corpse to avoid detection. There was no point to abusing McNulty's body save for destroying the evidence of his murder. The conspirators, for instance, would have gained nothing, nor furthered their plan, if they dismem-

so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

bered the body only to leave it in the home of one of the conspirators.[3]

In *Commonwealth v. Savage* we embraced the following multifactor test for distinguishing multiple conspiracies from single conspiracies. 388 Pa.Super. 561, 566 A.2d 272 (1989).

> [W]e ... find the multifactor totality of the circumstances analysis embraced by the majority of federal circuit courts for distinguishing single from multiple conspiracies to be a generally appropriate approach....
>
> The factors most commonly considered in a totality of the circumstances analysis ... are: the number of overt acts in common; the overlap in personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the location in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the degree to which interdependence is needed for the overall operation to succeed.

*Id.* at 575, 566 A.2d at 278 (citations omitted). Furthermore, "no one factor or combination of factors is necessarily dispositive." *Id.* at 575, 566 A.2d at 279.

In the case *sub judice*, there were two drug transactions, both involving the same people, the same location, held under similar circumstances, committed within one day of each other. Like the first issue raised by appellant, this one also addresses the sufficiency of the evidence. The record does not show, however, that appellant and Sheets shared a common objective, or that this was part of a common plan or scheme, other than a general purpose to make money illicitly. If, for instance, appellant and Sheets expressly told Kerstetter to come back the next day to pick up some more drugs, we might agree that there was but one conspiracy. Neither illegal transaction with Kerstetter, however, was necessarily

---

**3.** The acts of a killer such as Jeffrey Dahmer are distinguishable where the murderer dismembers the bodies of his victims for his own ghoulish gastronomic gratification. If Dahmer acted with another, they would probably have been guilty of conspiracy to abuse a corpse. If, later, they then disposed of the remains to avoid a police investigation, they would have been equally guilty of criminal conspiracy to hinder prosecution.

intertwined with the other; both were independent phenomena. Unlike the situation in *Lore*, where in order to destroy the evidence McNulty's corpse had to be abused, here the execution of one drug transaction was not necessary for the other one to succeed. Where the success of one crime is not dependent upon another, the conspiracy to commit both are separate and distinct.

Viewing the evidence in the light most favorable to the Commonwealth, we cannot say that as a matter of law two distinct conspiracies did not exist. Appellant focuses on the fact that Kerstetter believed that he would probably be back in the near future to purchase more cocaine. What the police and their informant believed is beside the point, however. The conspiracies existed between appellant and Sheets, not among appellant, Sheets, and Kerstetter.

"Just as a single entrepreneur may enter into several separate yet similar joint business ventures with the same or different partners or investors at the same time, criminals in general and drug traffickers in particular may enter into more than one criminal conspiracy involving similar crimes at the same time, even in the same area." *Savage,* 388 Pa.Super. at 572, 566 A.2d at 277. Apparently, Sheets and appellant created a corrupt partnership. The creation of a corrupt business venture, however, is distinguishable from a conspiracy to commit a specific crime. Murder, Incorporated, for instance, was one venture involved in many conspiracies. While dissimilar criminal acts may constitute one conspiracy, here similar crimes were the result of different and distinct conspiracies.

### III.

Appellant next argues that it was reversible error for the trial court to deny him access to Kerstetter's pre-sentence report. At the time of appellant's trial, Kerstetter was imprisoned at Camp Hill for committing forgery. N.T. 5/21/93. Kerstetter admitted that he had also been arrested for possession with intent to deliver marihuana, criminal mischief, and

disorderly conduct. *Id.* at 13–14, 28. Appellant maintains that part of his "defense strategy was to prove a history of drug abuse and drug dependency on the part of Mr. Kerstetter." Appellant's brief at 12. Appellant was looking to substantiate a theory that Kerstetter had access to cocaine, and at some time prior to the controlled buys had secreted cocaine in appellant's house. *Id.*[4] In order to further investigate this theory, and possibly impeach Kerstetter, the Commonwealth's key witness, appellant subpoenaed the Northumberland County chief probation officer for Kerstetter's pre-sentence report.

## A.

Appellant acknowledges that access to pre-sentence reports is limited under Rule 1404(a) of the Pennsylvania Rules of Criminal Procedure, which states that "[a]ll pre-sentence reports and related psychiatric and psychological reports shall be confidential, and not of public record." Pa.R.Crim.P. 1404(a), 42 Pa.C.S.A. He argues, however, that this privilege of confidentiality must yield in the face of his rights under both the Federal[5] and Pennsylvania Constitutions[6] to con-

---

**4.** On the stand Kerstetter denied having used cocaine, but did admit to having been arrested on some "drug charges." N.T. 5/21/93 at 14, 35.

**5.** This right is secured under the Sixth Amendment of the United States Constitution, which reads as follows:

*Amendment VI*

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI. This right is made available to the states through the Fourteenth Amendment. *Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

**6.** This right is also secured by the confrontation clause, Article 1, Section 9, which states in part:

**Rights of accused in criminal prosecutions**

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the

front his accusers. In support of his claim under the Federal Constitution, appellant cites to *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); and *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (hereinafter *Davis*). In arguing that his access to Kerstetter's pre-sentence report is also guaranteed under the Commonwealth's Constitution, appellant cites to *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967); *Commonwealth v. Davis*, 318 Pa.Super. 507, 465 A.2d 669 (1983) (hereinafter *Commonwealth v. Davis*); *Commonwealth v. Bradshaw*, 238 Pa.Super. 22, 364 A.2d 702 (1975); and *Commonwealth v. Pritchett*, 225 Pa.Super. 401, 312 A.2d 434 (1973).

While neither *Chambers* nor *Davis* specifically addresses the confidentiality of pre-sentence reports, both are concerned with a defendant's right of confrontation. In *Chambers*, the defendant, Leon Chambers, was accused of killing a Mississippi police officer during a riot. After his arrest, a friend of Chambers', Gable McDonald, admitted in a transcribed, witnessed, and signed confession to murdering the officer. McDonald later repudiated his confession. Chambers called McDonald to testify. After the State's cross-examination of McDonald, in which he once again repudiated this confession, Chambers' motion to cross-examine McDonald as an adverse witness was denied.[7] The Supreme Court held that Mississippi's "voucher" rule denied Chambers his Constitutional right to confront McDonald. *Chambers*, 410 U.S. at 295, 93 S.Ct. at 1045–46, 35 L.Ed.2d at 308–09. The Court was clear, however, in pointing out that this right is not absolute, and may give

accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage....

Pa. Const. Art. 1 § 9; *see, e.g., Commonwealth v. Spiewak*, 533 Pa. 1, 617 A.2d 696 (1992).

7. The trial court ruled that Chambers was precluded from impeaching his own witness under its "party witness" or "voucher" rule. *Chambers*, 410 U.S. at 294, 93 S.Ct. at 1045, 35 L.Ed.2d at 308. Chambers' attempt to then have three friends testify that they heard McDonald confess at other times was thwarted, on the grounds that their testimony would have been hearsay. *Id.*

way to "other legitimate interests." *Id.* at 295, 93 S.Ct. at 1046, 35 L.Ed.2d at 309 (citation omitted). Instead, the Court simply rejected Mississippi's contention that because McDonald was not a witness " '*against*' an accused," the Confrontation Clause was inapplicable in this instance. *Id.* at 297, 93 S.Ct. at 1047, 35 L.Ed.2d at 310 (citations omitted) (emphasis supplied).

In *Davis*, the defendant wanted to impeach a prosecution witness, Richard Green, with Green's juvenile record. The theory of the defense was that because Green was himself on probation for burglary at the time of the crime, he might have prematurely cooperated with the police and prosecution out of fear of forfeiting his own freedom. *Davis*, 415 U.S. at 311, 94 S.Ct. at 1107–08, 39 L.Ed.2d at 351. Before Green's testimony, a protective order was granted preventing any reference to Green's juvenile record by the defense on cross-examination. *Id.* at 310–311, 94 S.Ct. at 1107–08, 39 L.Ed.2d at 350–351.[8] On appeal, the Supreme Court stated that the defense was denied the opportunity to effectively impeach Green's credibility based upon his possible bias. *Id.* at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355. Defendant "was thus denied the right of effective cross-examination which 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'" *Brookhart v. Janis*, 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966). "*Smith v. Illinois*, 390 U.S. 129, 131, 19 L.Ed.2d 956, 88 S.Ct. 748 (1968)." *Id.* While both *Chambers* and *Davis* address the right to confront a witness on the stand with information already known to the defense, "nothing in the opinion indicated that an infringement on the right to cross-examination could occur *only* in that context." *Pennsylvania v. Ritchie*, 480 U.S. 39, 70, 107 S.Ct. 989, 1008, 94 L.Ed.2d 40, 66 (1987) (Brennan, J., dissenting) (plurality opinion) (emphasis supplied).

*Carter, Commonwealth v. Davis, Pritchett,* and *Bradshaw, supra,* 238 Pa.Super. 22, 364 A.2d 702, address the issue of mandatory disclosure of a witness's identity. None of the four

8. In doing so, the trial court relied on Alaska Rule of Children's Procedure 23 and Alaska Stat. § 47.10.080(g) (1971).

cases cited by appellant mention a defendant's right to confront witnesses under the Pennsylvania Constitution. Indeed, these cases did not even raise a federal constitutional issue. Rather, their holdings were based upon a generic appeal to "the proper role of the prosecution in criminal litigation and of the principles of fair trial." *Carter,* 427 Pa. at 55, 233 A.2d at 285 (citations omitted). These cases afforded to the defendant a pre-trial right to discover the identity of unnamed informants, based upon "the fundamental requirements of fairness" and a balancing of "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Commonwealth v. Davis,* at 513, 465 A.2d at 671–72 (quoting *Roviaro v. United States,* 353 U.S. 53, 60–2, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639, 645–46 (1957) (citation omitted)).

■ Appellant is correct when he argues that *Commonwealth v. Davis, Carter, Pritchett,* and *Bradshaw, supra,* require that a defendant first espouse a defense theory which would plausibly be aided by the identity of an informant, before being furnished such information during pre-trial discovery. It is incorrect, however, to assert that these cases stand for the proposition that "[t]he Pennsylvania Constitution also requires disclosure of the Pre–Sentence Report in certain circumstances." Appellant's brief at 14. Each interpreted the applicability of *Roviaro v. United States, supra,* to Commonwealth criminal procedure. *Roviaro,* however, "had been decided on federal law, rather than on constitutional grounds." *Commonwealth v. Davis,* 318 Pa.Super. at 513 n. 1, 465 A.2d at 671 n. 1.

■ In *Commonwealth v. Edmunds,* our Supreme Court set forth a minimum of four factors which should be briefed and analyzed by litigants whose arguments implicate a provision of the Pennsylvania Constitution. 526 Pa. 374, 586 A.2d 887 (1991). They are:

1) text of the Pennsylvania constitutional provision;

2) history of the provision, including Pennsylvania case-law;

3) related case-law from other states;

4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

*Id.* at Pa. 389, 586 A.2d at 895. Appellant has failed to include any of the above. His argument, that denying him a copy of Kerstetter's pre-sentence report violated the confrontation clause of the Pennsylvania Constitution, is no more than a bare assertion. Accordingly, this argument is waived. *See, e.g., Commonwealth v. Melson,* 432 Pa.Super. 1, 25 n. 7, 637 A.2d 633, 645 n. 7 (1994) (stating that failure to develop an argument constitutes waiver of claim), *allocatur denied,* 538 Pa. 633, 647 A.2d 509 (1994); *see also Commonwealth v. Santiago,* 405 Pa.Super. 56, 84 n. 24, 591 A.2d 1095, 1109 n. 24 (1991) (*en banc*) (holding constitutional questions based on the Confrontation Clause waived when not properly advanced), *allocatur denied,* 529 Pa. 633, 600 A.2d 953 (1991); *Commonwealth v. Sanford,* 299 Pa.Super. 64, 65, 445 A.2d 149, 150 (1982) ("We decline to become appellant's counsel. When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof." (citations omitted)). Accordingly, we only address appellant's claim that denying him access to Kerstetters' pre-sentence report violated the Federal Constitution.

## B.

In the Commonwealth, this is a case of first impression. In *United States v. Figurski,* however, the United States Court of Appeals for the Fourth Circuit held that a defendant had no absolute right of access to a federal pre-sentence report. 545 F.2d 389 (4th Cir.1976). There the federal court was concerned with the disclosure of the contents of pre-sentence reports as governed by Rule 32(c) of the Federal Rules of Civil Procedure and made applicable to reports made by the Bureau of Prisons under 18 U.S.C. Section 4208. *Id.* at 390. While the rule was silent as to disclosure of the report to third parties, a three-judge panel of the Fourth Circuit agreed that information should be disclosed to parties other than the

426

defendant if "required to meet the ends of justice." *Id.* (quoting *Hancock Brothers, Inc. v. Jones,* 293 F.Supp. 1229, 1233 (N.D.Cal., 1968)).

This meant that pertinent sections of a pre-sentence report could be made available to third parties if the additional information it would provide would create reasonable doubt in the verdict that otherwise did not exist. *Figurski,* 545 F.2d at 391 (using the same standard for disclosure as is used when deciding to grant a new trial based upon after-discovered evidence, as stated in *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342, 354 (1976)). The court held that "when requested to exhibit such a report, the district court should examine it *in camera* and disclose only those portions, if less than all, of the report which meet the [*Agurs*] test we prescribe." *Figurski,* 545 F.2d at 392.

Other federal courts have also held that in the absence of a specific prohibition regarding release to third parties in Rule 32(c), the need to keep the reports confidential has to be balanced with the desirability of disclosure. *See United States v. Charmer Industries,* 711 F.2d 1164, 1173 (2nd Cir.1983) (reviewing decisions finding disclosure of pre-sentence reports to third parties unwarranted). *But see, e.g., United States v. Dingle,* 546 F.2d 1378 (10th Cir.1976) (flatly prohibiting disclosure to the prosecution in third-party trials). While the controlling procedural rule in these cases was silent about a report's disclosure to third parties, *Figurski,* 545 F.2d at 391, in the case *sub judice,* Rule 1404 specifically requires confidentiality. Pa.R.Crim.P. 1404, 42 Pa.C.S.A. This privilege is not absolute, however. Among those who might legitimately have access to a pre-sentence report are the sentencing judge, an examining professional, attorneys for the Commonwealth and the defendant, correctional institutions, and departments of probation or parole both supervising the defendant and those preparing a pre-sentence investigation of the defendant. *Id.* It would seem given that the Commonwealth's pre-sentence reports are at all times "confidential and not of public record," *id.,* they would enjoy at minimum the same degree of protection as that afforded to federal pre-sentence

reports in *Figurski*. Because these cases cannot serve as precedent [9], however, we need to analyze the requirements and restraints of the Sixth Amendment on legislatively privileged materials, before we can decide whether or not presentence reports in Pennsylvania enjoy a greater, similar, or lesser degree of confidentiality than their federal counterparts.[10]

## C.

■ We begin by noting that "rules excluding evidence cannot be mechanistically applied to abridge a defendant's right of confrontation by denying admission of highly reliable and relevant evidence critical to his defense." *Commonwealth v. Spiewak*, 533 Pa. 1, 11, 617 A.2d 696, 701 (1992) (citation omitted). Rules of evidence are not phlegmatic axioms automatically applied to discomfit justice. *See Rock v. Arkansas*, 483 U.S. 44, 55, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37, 48 (1987).

■ "[T]he Confrontation Clause has as a basic purpose the promotion of the 'integrity of the fact finding process.'" *White v. Illinois*, 502 U.S. 346, 356–57, 112 S.Ct. 736, 743, 116 L.Ed.2d 848, 860 (1992) (quoting *Coy v. Iowa*, 487 U.S. 1012, 1020, 108 S.Ct. 2798, 2802–03, 101 L.Ed.2d 857, 866 (1988) (citation omitted)). That the guilty shall not go free nor the innocent be imprisoned, it exists to provide the trier of fact sufficient information in order to divine the truth. *Commonwealth v. Wall*, 413 Pa.Super. 599, 611–13, 606 A.2d 449, 456

9. "When the United States Court of Appeals for the Third Circuit has held certain practices or procedures to violate federal constitutional rights, its decision will be accepted and followed by the courts of this Commonwealth until the United States Supreme Court has spoken on the issue." *Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 620 n. 5, 375 A.2d 1285, 1288 n. 5 (1977) (citations omitted). Even if the Third Circuit Court of Appeals were to speak to this issue, however, it would be addressing the impact of the Confrontation Clause on federal, and not Commonwealth, pre-sentence reports.

10. We have previously cited *Figurski*, with approval, for the proposition that a trial court may legitimately review material *in camera* to *a priori* determine its exculpatory value. *Santiago*, 405 Pa.Super. at 90, 591 A.2d at 1113. In that case, we held that basic due process requires a court to disclose to a defendant materially exculpatory evidence. *Id.* at 84, 591 A.2d at 1110.

(1992), *allocatur denied*, 532 Pa. 645, 614 A.2d 1142 (1992). Because it aims to secure a fair trial, it is essential for the protection of life and liberty. *Pointer v. Texas*, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 926–27 (1965); *see also United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1064 (1974) ("The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts.").

■ This does not mean that the Confrontation Clause, when encountering privileged confidential materials, is a like a scythe that indiscriminately cuts down both the wheat and the chaff. "The policy behind the confrontation clause must give way to the public's interest in effective law enforcement, the probative necessities of particular cases, and other policy considerations." *Commonwealth v. Haber*, 351 Pa.Super. 79, 97, 505 A.2d 273, 283 (1986) (Olszewski, J., dissenting) (citation omitted). The right of confrontation "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers*, 410 U.S. at 295, 93 S.Ct. at 1046, 35 L.Ed.2d at 309 (citation omitted); *see also Rock*, 483 U.S. at 55, 107 S.Ct. at 2711, 97 L.Ed.2d at 49 (1987); *Wall*, 413 Pa.Super. at 611–15, 606 A.2d at 456–7. "While the rights provided by the Confrontation Clause are fundamental rights, guaranteed by both the federal and state constitutions, they are not absolute and 'must occasionally give way to considerations of public policy and the necessities of the case.'" *Commonwealth v. Crosland*, 397 Pa.Super. 622, 625, 580 A.2d 804, 806 (1990) (quoting *Mattox v. United States*, 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895)). "The state court is free to develop rules of evidence which may, on their face, 'conflict with the confrontation clause, provided we closely examine the rules and determine that the integrity of the factfinding process is not infringed.'" *Commonwealth v. Franklin*, 397 Pa.Super. 265, 281, 580 A.2d 25, 33 (1990) (quoting *Commonwealth v. Kravontka*, 384 Pa.Super. 346, 351–52, 558 A.2d 865, 868 (1989) which cited United States Supreme Court precedent), *allocatur denied*, 527 Pa. 641, 593 A.2d 415 (1991). We are constantly mindful, however, that "[w]hatever their origins, these exceptions to the demand for

every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Nixon*, 418 U.S. at 710, 94 S.Ct. at 3108, 41 L.Ed.2d at 1065 (footnote omitted).

The rule enunciated in *Davis, supra,* 318 Pa.Super. 507, 465 A.2d 669, making a witness's juvenile record accessible to the defendant when materially exculpatory, specifically addressed whether or not defense counsel could use privileged materials to impeach a witness on the stand. Here, we first must determine if judicially privileged pre-sentence reports are immune from discovery by the defense.[11]

■ The Confrontation Clause does not constitutionally guarantee access to pre-trial discovery. *Commonwealth v. Carillion,* 380 Pa.Super. 458, 466–68, 552 A.2d 279, 283 (1988). The right to confrontation is a trial right. *Ritchie,* 480 U.S. at 53–4, 107 S.Ct. at 999, 94 L.Ed.2d at 54. A defendant does not have a right to discover any and all material potentially useful for impeaching a witness. *Id.* "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 19 (1985) *(per curiam)* (emphasis supplied) (citation omitted). Thus, "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these [forgetfulness, confusion, or evasion] infirmities through cross-examination...." *Id.* at 22, 106 S.Ct. at 295, 88 L.Ed.2d at 21. Here, appellant was clearly able to impeach Kerstetter with his prior record, which included charges for drug possession. N.T. 5/21/93 at 28–9.

### D.

While the Confrontation Clause does not attach, *per se,* to pre-trial discovery requests, we must also examine whether or

11. Rule 1404, like all other Pennsylvania Rules of Criminal Procedure, was adopted by the Supreme Court in accordance with its power under the Pennsylvania Constitution, Article 5, section 10; and 42 Pa.C.S.A. section 1722.

not the withholding of the report was a violation of appellant's right to due process. Kerstetter denied being addicted to cocaine. *Id.* at 35. Appellant's theory is that Kerstetter had access to cocaine and, prior to the two controlled buys, hid some cocaine in appellant's house, in effect "setting up" appellant. Appellant's brief at 14. Thus, if Kerstetter's pre-sentence report indicated a history of cocaine use, that information could presumably have been used to impeach Kerstetter's testimony as a fabrication. Most importantly, the court had access to this information when it was requested by appellant.

Due process demands that materially exculpatory evidence in the hands of a prosecutor be turned over to the defense. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Exculpatory evidence is evidence that is material to a determination of guilt or innocence or affects the credibility of key prosecution witnesses. *Commonwealth v. Redmond,* 395 Pa.Super. 286, 296–98, 577 A.2d 547, 552 (1990), *allocatur granted,* 526 Pa. 632, 584 A.2d 315 (1991), *appeal dismissed,* 528 Pa. 601, 600 A.2d 190 (1992); *see also United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Merely collateral evidence is not materially exculpatory. *Redmond,* 395 Pa.Super. at 296–98, 577 A.2d at 552. Impeachment evidence, however, does fall within the *Brady* rule. *Id.* at 298, 577 A.2d at 553; *see also Bagley,* 473 U.S. at 676, 105 S.Ct. at 3380, 87 L.Ed.2d at 490. Moreover, evidence of fabrication is always exculpatory. *Wall,* 413 Pa.Super. at 619–620 n. 16, 606 A.2d at 460 n. 16.

Even if true, evidence that Kerstetter allegedly used and therefore had access to cocaine is far short of being proof that his accusations were fabricated. A pre-sentence report detailing Kerstetter's cocaine abuse would have called into question his denying ever having used cocaine. This issue, however, would have been collateral to appellant's guilt or innocence. Moreover, since Kerstetter already admitted to having drug charges levied against him, evidence that he abused cocaine would have only served to attack his credibility on a collateral

issue. Thus, we believe that the information allegedly contained within Kerstetter's pre-sentence report would not have been materially exculpatory. Giving appellant the benefit of the doubt, however, we will analyze his due process right to Kerstetter's pre-sentence report on the assumption that it could have contained evidence materially exculpatory under *Brady*.

While this information was not in the hands of the prosecutor in appellant's case, the trial court did have access to the report. We have previously held, however, that *Brady* applies to exculpatory materials within the court's possession. *Santiago*, 405 Pa.Super. at 92–94, 591 A.2d at 1114. "[T]he trial court's obligation to disclose to the defense materially exculpatory information in its possession, like that of the prosecution, exists absent any request." *Id.* at 97, 591 A.2d at 1116 (footnote omitted).

This right, however, does not mean that a defendant has unfettered access to files not in his possession. *Ritchie*, 480 U.S. at 59–60, 107 S.Ct. at 1003, 94 L.Ed.2d at 59. Nor can a defendant search untrammeled through Commonwealth files in order to argue the relevance of materials found therein. *Id.* "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one. . . ." *Id.* (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30, 43 (1977)).

In *Commonwealth v. Eck*, we outlined a schematic by which we could discern what level of access, if any, a defendant should be afforded when requesting confidentially privileged materials. 413 Pa.Super. 538, 605 A.2d 1248 (1992). Relying on United States Supreme Court precedent in *Ritchie, supra;* Pennsylvania Supreme Court's holding in *Commonwealth v. Wilson/Aultman*, 529 Pa. 268, 602 A.2d 1290 (1992), *cert. denied*, 504 U.S. 977, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992); and our own holdings in *Commonwealth v. Kennedy*, 413 Pa.Super. 95, 604 A.2d 1036 (*en banc*), *allocatur denied*, 531 Pa. 638, 611 A.2d 711 (1992); and *Commonwealth v. Kyle*, 367 Pa.Super. 484, 533 A.2d 120 (1987), *allocatur. denied*, 518 Pa. 617, 541 A.2d 744 (1988), we stated:

First, a defendant's right to access is dependant upon whether the information is protected by a statutory privilege and whether that privilege is absolute. Information which is protected by an absolute statutory privilege is not subject to disclosure and denial of access to a criminal defendant is required....

On the other hand, a privilege which is statutorily enacted, but which is subject to exceptions, is not absolute and access to a criminal defendant may be required.

*     *     *     *     ₁     *     *

Finally, privileges which are not statutorily enacted, but rather are recognized by the common law, must yield to the constitutional rights of a criminal defendant.

*Eck*, 413 Pa.Super. at 546–47, 605 A.2d at 1252–53.

In the case *sub judice*, the privilege is enacted not by statute, but by a rule adopted by the supreme court. *See supra* n. 11. While such rules cannot abrogate or alter legislatively conferred substantive rights, *Marquez v. Hahnemann Medical College and Hospital of Philadelphia*, 56 Pa. Cmwlth. 188, 424 A.2d 975 (1981), they otherwise have the same effect as statutes. *Cf. Dombrowski v. City of Philadelphia*, 431 Pa. 199, 203 n. 4, 245 A.2d 238, 241 n. 4 (1968) (stating that rules of civil procedure have the same force of statutes). Accordingly, we analyze Rule 1404 as if it were statutorily enacted.

The privilege of confidentiality accorded pre-sentence reports in Rule 1404 is not absolute. As stated *supra*, Commonwealth prosecutors, defense counsels, the sentencing judge, and appropriate correctional, probation, and or parole agencies may have access to a pre-sentence report. Pa.R.Crim.P. 1404, 42 Pa.C.S.A. A pre-sentence report, therefore, does not enjoy the absolute privilege that would exist if the Commonwealth had indicated a compelling interest worthy of the protection of confidentiality paramount to the right of confrontation. *See Wilson/Aultman*, 529 Pa. at 280–82, 602 A.2d at 1297; *see also Commonwealth v. Moore*, 526 Pa. 152, 159, 584 A.2d 936, 940 (1991) ("[I]t should be readily apparent that the

general powers of the courts do not include the power to order disclosure of materials that the legislature has explicitly directed be kept confidential.")

We would not say, however, that the Commonwealth's limited and purposeful access to Kerstetter's pre-sentence report reduced its protection of confidentiality absolutely. When the privileged item is viewed by the Commonwealth, the confidentiality interest is diminished. It no longer enjoys the absolute privacy protection accorded it by statute, but now wears a privilege "more akin to one extant at common law, which our Supreme Court has held must yield to a defendant's right of confrontation and compulsory process." *Commonwealth v. Davis*, 437 Pa.Super. 471, 487, 650 A.2d 452, 460 (1994) (quoting *Commonwealth v. Gibbs*, 434 Pa.Super. 280, 287–88, 642 A.2d 1132, 1136 (1994) (citation omitted)). We must be careful to distinguish the Commonwealth as prosecutor in the Kerstetter case from the Commonwealth as prosecutor in appellant's case. Because the Commonwealth had a right of access to the report in the former prosecution does not mean it equally enjoyed such access in the latter.

Here the privilege of confidentiality is subject to exceptions. We therefore need to balance the need for our courts to receive accurate and unconstrained information helpful to sentencing defendants appropriately, as well as Kerstetter's privacy interest, with appellant's constitutional right to confront witnesses. We believe that our analysis here is squarely guided by the Supreme Court's holding in *Ritchie*. There, the defendant was charged with sexually abusing his twelve-year-old daughter. Defendant subpoenaed Child Welfare Services (CWS) [12] in order to obtain any information that could have been favorable to his defense. We held that defendant's constitutional rights could be guaranteed by a trial court's *in camera* inspection of the CWS file, making available to defendant only verbatim (or equivalent) statements by the victim concerning the abuse. *Commonwealth v. Ritchie*, 324 Pa.Super. 557, 472 A.2d 220 (1984). Our Supreme Court reversed, holding that in this case "the Commonwealth's interest in

12. CWS is now designated Children and Youth Services.

maintaining the confidentiality of [CWS] records may not override a defendant's right to effectively confront and cross-examine the witness against him." *Commonwealth v. Ritchie*, 509 Pa. 357, 367, 502 A.2d 148, 153 (1985). Accordingly, the Supreme Court remanded the case, instructing that defendant be allowed access to CWS files. *Id.*

On appeal, however, the United States Supreme Court reversed in part and remanded, holding that an *in camera* inspection by the court ensured the defendant a fair trial. *Ritchie*, 480 U.S. at 60, 107 S.Ct. at 1002–03, 94 L.Ed.2d at 59. In effect agreeing with our earlier decision, the High Court stated that "[a]lthough this rule denies Ritchie the benefits of an 'advocate's eye,' .... [t]o allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child abuse information." *Id.* The *in camera* review, therefore, was held to properly balance the defendant's needs while protecting the confidentiality of others. *Id.* at 61, 107 S.Ct. at 1003, 94 L.Ed.2d at 60.[13]

"[*Ritchie*] rejected the notion adopted by this Commonwealth's highest tribunal that the confrontation clause translated into a constitutionally compelled rule of pre-trial discovery." *Carillion*, 380 Pa.Super. at 467, 552 A.2d at 283.

> In other words, the Supreme Court rejected the notion embraced by the Pennsylvania Supreme Court that Ritchie's right to evidence in the agency file pivotal to his defense could only be adequately safeguarded by his counsel. Instead, the United States Supreme Court confined disclosure to *in camera* review by the trial court, with the accused retaining the right to apply directly to the court for

---

**13.** The Supreme Court in *Ritchie* reached only a plurality decision. Justice Blackmun, in a concurring opinion, disagreed with the Court's opinion that the Confrontation Clause had no applicability to pre-trial discovery. *Ritchie*, 480 U.S. at 61, 107 S.Ct. at 1003, 94 L.Ed.2d at 60. He agreed with four other justices, however, that the *in camera* review of CWS records adequately addressed defendant's Sixth Amendment rights. *Id.* at 65, 107 S.Ct. at 1005, 94 L.Ed.2d at 62. We have previously concluded that the analysis in *Ritchie* was "principled and persuasive," indeed if not controlling. *Kyle*, 367 Pa.Super. at 491, 533 A.2d at 124; *see also Commonwealth v. Lloyd,* 523 Pa. 427, 567 A.2d 1357 (1989).

discovery of any *specific* information contained in the file and to argue its significance to his case. *Id.* at 470, 552 A.2d at 284 (emphasis supplied).

█ We believe that an *in camera* inspection by the court equally protects any constitutional concerns appellant might have in this case, while at the same time ensuring the judicially mandated confidentiality of Kerstetter's pre-sentence report. Perhaps the interests protected in the case *sub judice* are not as vulnerable or delicate as those in *Ritchie.* We recognize, however, that the Supreme Court has attempted to legitimately address the needs to fully apprise a sentencing court of a defendant's background and profile in order to impose an appropriate sentence, while at the same time assuring that those involved in the process feel free to communicate to the court without inhibition. *See* Pa.R.Crim.P. 1404—*Comment,* 42 Pa.C.S.A.[14] Such a review by the court would mean that withholding the report from appellant did not *per se* implicate the Sixth Amendment.

█ Because the trial court did have an *in camera* review of Kerstetter's pre-sentence report, we ultimately find appellant's right of confrontation was not violated by denying him

---

**14.** Rule 1404(b) of the Pennsylvania Rules of Criminal Procedure, regarding the disclosure of pre-sentence reports, states that "[i]f the defendant or the Commonwealth alleges any factual inaccuracy in a report under this rule, the sentencing judge shall, as to each inaccuracy found, order that the report be corrected accordingly." 42 Pa. R.Crim.P. 1404(b). With this section, the judiciary "intended to insure that reports considered by the sentencing judge and disclosed after sentencing are factually accurate...." *Id.* at *Comment.* Nevertheless, we are concerned with the reliability of information found in presentence reports. *See Charmer Industries,* 711 F.2d at 1175. Inaccurate information in the report may not be called into question by defendant or Commonwealth. *Id.* ("[N]otwithstanding the goal of accuracy in presentence reports, there is no requirement that the defendant voice his objection to any statement with which he disagrees, and we assume that not all statements with which a defendant might take issue are actually challenged."); *cf. Commonwealth v. Doyle,* 275 Pa.Super. 373, 381–82, 418 A.2d 1336, 1341 (1979) ("In the absence of objection by appellant, the sentencing judge was free to consider the pre-sentence report and the psychiatric reports.")

More importantly, information contained in the report may not meet the same standards of admissibility demanded of evidence introduced at trial. *Commonwealth v. Shoemaker,* 226 Pa.Super. 203, 211–13, 313

direct access to the materials in question. In denying defense counsel's request to view Kerstetter's report, the Honorable Samuel C. Rank explained:

Well, on the record, the Defense Counsel has requested to subpoena the Pre–Sentence Report of James Kerstetter. Under Rule 1404, they are confidential records and there is only a certain limited exception and this is not one of them. And I'll, therefore, deny the request. **I might add, I have reviewed the Pre–Sentence Investigation and I didn't really see anything that would be all that of interest. It has his prior record, the fact that he has used drugs, but no details.** It was just that.

N.T. 5/21/93 at 26 (emphasis added). The trial court's review of the record conforms to the constitutional protections similar to those recommended in *Ritchie* and *Figurski, supra.*

## IV.

Finally, we note that appellant was charged with restitution of $290.00 and $180.00. N.T. 3/8/94 at 8. This money was to reimburse the District Attorney's office for the amount Kerstetter paid Sheets for the cocaine. While Kerstetter did spend $180.00 in one buy, he did not expend $290.00 the next day. He was given $290.00, but only spent $270.00, returning the unspent twenty dollars, with the drugs, to the Northumberland Police Department. N.T. 5/21/93 at 25. Accordingly, appellant's sentence should be modified. *See Commonwealth ex rel. Larsen v. Larsen,* 211 Pa.Super. 30, 35–37, 234 A.2d 18, 21 (1967) (stating that an appellate court has the authority to

A.2d 342, 347 (1973), *aff'd,* 462 Pa. 342, 341 A.2d 111 (1975). Hearsay, as well as inaccurate and extraneous information, might find its way into the reports. *See Charmer Industries,* 711 F.2d at 1175. "No formal limitations inhibit the collection of information for such reports. The reports frequently contain hearsay and information not relevant to the crime charged.... [T]here may be no opportunity, even at a hearing, for the defendant to confront the maker of the disputed hearsay statement...." *Id.* It is significant to note that recently, the Federal Court of Appeals for the Ninth Circuit refused to extend the holding of *Chambers v. Mississippi, supra* at 10, when the excluded evidence at issue lacks any significant indicia of reliability. *United States v. Fowlie,* 24 F.3d 1059 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 742, 130 L.Ed.2d 643 (1995).

amend a verdict to conform with the obvious intention of the trial court).

## V.

In conclusion, we find that the evidence was sufficient to convict appellant of two counts of conspiracy to deliver a controlled substance. In addition, the *in camera* review of Kerstetter's pre-sentence report protected appellant's federally guaranteed right under the Sixth Amendment to confront witnesses, as well as his right to due process, while at the same time ensuring the confidentiality of the report as mandated by Rule 1404(a) of the Pennsylvania Rules of Criminal Procedure. The amount of restitution to be paid by appellant, however, is modified to accurately reflect the intent of the sentencing court.

Judgment of sentence affirmed as modified.

WIEAND, J., concurs in the result.