J-A02010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID JACK RITCHEY, JR. | : | |
| | : | |
| Appellant | : | No. 397 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 8, 2021
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0001404-2020

BEFORE: BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                                  **FILED: MAY 5, 2023**

David Jack Ritchey, Jr. appeals from the judgment of sentence of an aggregate eleven and one-half to twenty-seven years of incarceration, followed by twelve months of re-entry supervision, imposed upon his convictions for multiple possessory offenses involving firearms and drug paraphernalia. We affirm.

The trial court provided the following factual summary of the evidence the Commonwealth proffered at trial:

> [A]t about 8:30 a.m. on August 25, 2020, Detective Sergeant Aldo Legge of the Center Township Police Department and the Beaver County Drug Task Force [was contacted by a confidential informant ("the CI")], telling him that [Appellant] would sell firearms in a controlled purchase. Based on a discussion with Detective [Robert] Chamberlain, Sergeant Legge went undercover for the operation. They chose the parking lot of Harbor Freight at the Beaver Valley Mall, Center Township, Pennsylvania, as the site

---

[*] Retired Senior Judge assigned to the Superior Court.

of the controlled purchase because it was away from the general public. The CI told Sergeant Legge to bring $1,000.00 to the sale. Sergeant Legge drove his undercover car to the parking lot alone and waited for [Appellant].

[Appellant] drove his father's 2017 Silver Nissan Altima to pick up the CI and bring him to the location of the planned sale. At approximately 3:00 p.m. on August 25, 2020, [Appellant] arrived at the parking lot, where he backed in to park next to Sergeant Legge's undercover car. [Appellant] and the CI exited the Altima and shook Sergeant Legge's hand. [Appellant] was wearing black gloves. [Appellant] said he had a rifle and a revolver for sale. He walked to the back of the Altima, where he opened the trunk to show a black plastic bag with an exposed portion of the AR-15 rifle. Sergeant Legge pulled the plastic off of the rifle to expose it. [Appellant] pulled a loaded .38 caliber pistol from his waistband, which he pointed in the direction of Sergeant Legge's head. Sergeant Legge asked what [Appellant] was doing, and [Appellant] said that he was showing it to him. He put it back in his waistband. Sergeant Legge asked [Appellant] how much he wanted, and [Appellant] said $1,000. Video (and not audio) of this encounter was captured on a key fob camera carried by Sergeant Legge, which Sergeant Legge put in his pocket when he approached the trunk.

Detective Sergeant Legge gave a prearranged signal while he removed $1,000 cash from his pocket to complete the arranged sale. Prior to the transfer of money, marked police cars arrived, at which time [Appellant] threw the pistol in the trunk, closed the trunk, and said, "you've got to be kidding me." [Appellant] was arrested and charged in connection with this incident. [The police also feigned arresting Detective Legge and the CI to camouflage the fact that it had been a controlled buy operation.] A search of [Appellant's] body recovered a cloth eyeglass case containing syringes. A warranted search of the car recovered two glass pipes consistent with crack cocaine use, as well as other items of drug paraphernalia. Both of the firearms recovered from the trunk of the car were operable. At the time of his arrest, [Appellant] had $5.00 or less in cash on his person.

Trial Court Opinion, 3/18/22, at 7-9 (cleaned up).

Appellant was charged with two counts each of possession of a firearm prohibited and firearms not to be carried without a license, one count each of possession of drug paraphernalia and driving with a suspended license, and six additional violations of the Uniform Firearms Act ("UFA") pursuant to 18 Pa.C.S. § 6111(a)(1), (a)(2), and (c) related to the possession and sale of the firearms.[1] When Appellant was on his fourth attorney in this matter, after having obtained repeated continuances following changes of counsel, the Commonwealth sought to amend the criminal information, changing the six UFA counts to attempt offenses.[2] The Commonwealth also filed notice of its intent to introduce evidence of other acts, requesting that the owner of the firearms, Peter Williams, be permitted to authenticate them and state at trial that they were stolen. The trial court granted both Commonwealth motions.

On July 2, 2021, trial counsel requested that the Commonwealth provide as discovery the name of the CI, any promises or benefits given to the CI, and unredacted copies of the Beaver County Drug Task Force concerning this case. The Commonwealth complied with the defense discovery requests.

_____

[1] The affidavit of probable cause attached to the criminal complaint did not indicate that the CI was a paid informant, but rather referred to him as "the unwitting third party." *See* Affidavit of Probable Cause, 8/25/20, at 1.

[2] Pretrial, the Commonwealth withdrew the count of carrying a firearm without a license that pertained to the rifle in Appellant's trunk, due to the barrel length requirements of the statute. *See* N.T. Pretrial Conference Hearing, 10/25/21, at 3-4.

- 3 -

Between July 6 and August 10, 2021, Appellant authored multiple *pro se* filings that were properly forwarded to his retained counsel in accordance with Pa.R.Crim.P. 576. Although the issues were not properly raised in a subsequent counseled filings, we set forth the substance of the pro se documents as they are pertinent to issues Appellant raises in this appeal. Appellant first claimed that he made an involuntary waiver of his right to a preliminary hearing because the reference to an unwitting third party in the charging documents misled him into thinking someone other than the CI, who "was already well known to" Appellant, was also involved and, further, that the "controlled buy" was not really controlled at all. ***See*** Letter, 7/6/21, at 2. Appellant also asserted that he had still not seen the Commonwealth's discovery and that his counsel was ineffective because he did not comply with Appellant's request that he move to compel the CI "to be physically present to answer any false statements given or involvement in other crimes or the evidence used against" Appellant. ***Id***. at 3.

Next, Appellant filed a *pro se* motion to compel discovery, complaining that the information redacted from discovery documents by the Commonwealth to protect the identify of the CI, whose status as the unwitting third party Appellant acknowledged and whose name Appellant disclosed, was omitted to deprive Appellant "of key exculpatory details into the lack of investigation" into the CI's relationship with Appellant and lack of control over the controlled buy. ***See*** *Pro Se* Motion to Compel, 8/2/21, at 3-4.

- 4 -

On August 10, 2021, Appellant submitted another *pro se* letter, again disclosing the identity of the CI, indicating that his counsel had showed him all the Commonwealth's discovery materials but maintaining that the Commonwealth was continuing to withhold exculpatory evidence such as additional video evidence recorded by the CI and the police cruiser and DNA evidence from the contraband. *See* Letter, 8/10/21, at 1-2. He also alleged "that the cell data/cell phone dump" that he had requested of the CI's mobile phone had not been provided to him, and that the communications between the CI and detectives would show that "this was a gov. manufactured crime." *Id*. at 2. Appellant further asserted that the CI violated his informant contract with the police by committing crimes himself, that his counsel had a conflict of interest and was not pursuing witnesses who saw the CI place the contraband in Appellant's car, and that the CI should be compelled to testify at an evidentiary hearing.[3] *Id*. at 3-5.

At a pretrial conference on October 25, 2021, the Commonwealth indicated that it had no plan to call the CI as a witness. *See* N.T. Pre-trial Conference, 10/25/21, at 39. Appellant asked for the appointment of new counsel, indicating that he and hired counsel were not in agreement about calling as trial witnesses the CI and Janna Gahagen, with whom Appellant had

---

[3] The day after Appellant's last *pro se* submission was docketed and served on counsel, the Commonwealth filed a motion to seal Appellant's filing and for a protective order, which the trial court granted.

been in contact "this whole time." *Id*. at 40-42. When the parties appeared the following day, Appellant's counsel indicated that Appellant maintained his insistence that these witnesses be called to testify, although doing so was contrary to the trial strategy that had "been set forth to [Appellant] for two trial terms" at that point. *See* N.T. Trial, 10/26/21, at 3-4. Counsel indicated his efforts to contact the witnesses whom he did not believe should be called, and the Commonwealth did the same, explaining that police detectives had tried to track down the CI, who was also the subject of bench warrants in multiple counties but remained at large. *Id*. at 14-18.

Ultimately, counsel indicated that he had developed the strategy that he believed gave Appellant the best opportunity for a successful result and was prepared to present that defense, which did not include the witnesses Appellant wanted to call. *Id*. at 17. Appellant maintained his desire "to have the ability to be able to cross-examine [the CI] as [Appellant's] defense." *Id*. at 18. Accordingly, Appellant requested additional time to gather more evidence and secure the presence of the witnesses. *Id*. at 20. The trial court, recounting the litany of changes of counsel and continuances, declined to grant yet another delay with the jury panel present and ready to begin. *Id*. Therefore, it gave Appellant the choice of proceeding to trial that day with counsel of record, or proceeding *pro se* with standby counsel. Appellant opted to proceed with counsel. *Id*. at 20-21.

At the ensuing trial, the parties stipulated to Appellant's status as a person prohibited from possessing or controlling firearms under the UFA. Detective Legge testified about receiving a call from the CI, an established, paid informant, that led him to go undercover as a buyer of firearms from Appellant and participate in the controlled buy described *supra*. The Commonwealth further offered as exhibits video and photographs of the prearranged buy and the recovered contraband. Mr. Williams identified the firearms as his, stating that they had been stolen.

Appellant testified on his own behalf, admitting that the syringes were his, but claiming that the CI had placed "collectibles" into the trunk of his car without his awareness. While Appellant was driving the CI to the sale, the CI informed him that there were firearms in the trunk. Appellant wore gloves because he did not want to have anything to do with the guns and denied requesting money from Detective Legge for the firearms. Instead, he claimed that he never had possession of any firearm and Detective Legge had tried to push the money at him.

The jury did not credit Appellant's version of events and convicted him on all counts.[4] Indeed, in reaching its verdict, the jury specifically found that at the time of the commission of the § 6105(a)(1) offense, Appellant was in

---

[4] The trial court separately found Appellant guilty of driving with a suspended license.

physical possession or control of a firearm, whether visible, concealed or within his reach. **See** Verdict slip, 10/29/21, at 1-2.

On December 8, 2021, the trial court imposed the sentence detailed above. Appellant filed a post-sentence motion and supplement raising eleven issues. After holding oral argument on the motions and receiving post-hearing briefs, the trial court issued an order and opinion denying the motions. **See** Trial Court Opinion, 3/18/22. This timely appeal followed.[5]

Appellant, proceeding with new counsel on appeal, raises the following issues, which we have re-ordered for ease of disposition:

I)     Whether the trial court erred and abused its discretion by finding that the jury's verdict was based on evidence sufficient to sustain Appellant's conviction[s] beyond a reasonable doubt when the [CI], a material fact witness[,] did not testify at trial, whereas Appellant did on all aspects of the alleged "controlled buy" including the genesis of the same and his innocence?

II)    Whether the trial court erred and abused its discretion in not finding that Appellant's substantive due process rights and the right to confront the witnesses against him under the Sixth Amendment to the Constitution were violated based on the failure of the Commonwealth to call the [CI], a material fact witness[,] at trial and by not, *sua sponte*, continuing the trial upon the revelation of the unavailability of the CI and another material witness (Janna Gahagan) or later, giving an adverse inference instruction?

---

[5] The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal and none was filed. The trial court provided a Rule 1925(a) opinion pointing to an unredacted version of its opinion disposing of Appellant's post-sentence motions as the statement of reasons for its rulings.

III)   Whether the trial court erred and abused its discretion by not granting the Appellant an arrest of judgment/judgment of acquittal on the grounds of outrageous government conduct as a result of the failure of the Commonwealth to not have the [CI] testify at trial, to not have fully extracted and/or disclosed the entire cell phone extraction for discovery purposes to Appellant, and for representing the transaction as a "controlled buy"?

IV)    Whether the trial court erred and abused its discretion in not finding that the Appellant had been entrapped under the facts and circumstances of his case by meeting his burden and the Commonwealth failing to rebut the same as a matter of law?

V)     Whether the trial court erred and abused its discretion by not granting a new trial, finding that the jury's verdict was not against the weight of the evidence when the same was based on prejudicial, misleading, and tainted evidence?

VI)    Whether the trial court erred and abused its discretion when it failed to arrest judgment/judgment of acquittal in favor of Appellant, or award him a new trial, in light of the Commonwealth's **_Brady_** violation regarding his discovery request for all the CI's text messages with the undercover police officer and the Commonwealth's failure to provide all of the same?

Appellant's brief at 11-12.

Appellant first purports to challenge the sufficiency of the evidence to sustain his convictions.[6]  The following principles apply to consideration of these claims:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond

---

[6] Appellant does not challenge his conviction for possessing drug paraphernalia.

- 9 -

a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Haahs*, 289 A.3d 100, 104 n.2 (Pa.Super. 2022) (cleaned up).

Many of Appellant's supposed sufficiency challenges have little or nothing to do with evidentiary sufficiency. We shall start with Appellant's arguments that truly implicate the adequacy of the Commonwealth's evidence when viewed as mandated by our above standard of review, beginning with his convictions for persons not to possess a firearm and carrying a firearm without a license. The UFA defines the offense of person not to possess a firearm as follows:

A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

*See* 18 Pa.C.S. § 6105(a)(1). The UFA defines the offense of carrying a firearm without a license as follows:

- 10 -

> any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

*See* 18 Pa.C.S. § 6106(a)(1).

Where a defendant was not in physical possession of a firearm, the Commonwealth may meet its burden, pursuant to both § 6105 and § 6106, by establishing that the defendant had constructive possession of the item. *See Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa.Super. 2018) ("Illegal possession of a firearm may be established by constructive possession."). Constructive possession is found where the defendant had "conscious dominion" over the firearm. *Commonwealth v. Heidler*, 741 A.2d 213, 215-16 (Pa.Super 1999). To prove conscious dominion, "the Commonwealth must present evidence to show that the defendant had both the power to control the firearm and the intent to exercise such control." *Id*. at 216 (cleaned up). Constructive possession may be proven by circumstantial evidence and the "requisite knowledge and intent may be inferred from examination of the totality of the circumstances." *Commonwealth v. Smith*, 146 A.3d 257, 263 (Pa.Super. 2016) (cleaned up).

There is no dispute regarding the recovery of illegal firearms in the instant matter. *See* N.T. Trial, 10/28/21, at 16 (stipulating that Appellant was ineligible to legally possess a firearm). Rather, Appellant asserts that the Commonwealth failed to prove that he had actual or constructive possession

of the firearms. *See* Appellant's brief at 39-42. In support of his claim, Appellant summarizes his own testimony that the CI placed the firearms in his vehicle without his knowledge, and despite standing within arm's reach of the firearm in his trunk, he had no intent to control it. *Id*. Moreover, Appellant points to the fact that the Commonwealth chose not to test the firearms for fingerprints, as evidence that he never handled the firearms. *Id*. at 46.

In explaining its finding that there was sufficient evidence to establish Appellant's actual and constructive possession of the loaded firearms, the trial court opined:

> Detective Legge testified that [Appellant] held the pistol in his hand and pointed it at him. The jury was free to believe this testimony, which unambiguously demonstrates that [Appellant] had actual possession of the pistol. This was indicated by the jury's factual finding at counts 1 and 2 that "[Appellant] was in physical possession or control of a firearm, whether visible, concealed about [Appellant], or within [Appellant's] reach." Even accepting [Appellant's] version of events, when the CI told him that the items in the trunk were guns, [Appellant] then possessed the guns by bringing them to the sale rather than renouncing pursuit of the criminal offense. The Commonwealth was not required to perform any DNA or fingerprint tests to link the guns to [Appellant]; the jury was free to credit the testimonial and circumstantial evidence linking [Appellant] to the guns. . . . [Appellant] is merely rehashing his argument to the jury that they should not believe the police narrative. However, the jury was free to believe Detective Legge's testimony that [Appellant] possessed the pistol in the car and in his hand. Therefore, this challenge fails.

Trial Court Opinion, 3/18/22, at 13.

Based on our review of the evidence, in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court that it was

sufficient to convict Appellant of possession of a firearm by a prohibited person and carrying a firearm without a license. The jury was free to believe Detective Legge's testimony that Appellant held the pistol in his hand and pointed it at Detective Legge, establishing actual possession of that firearm. Moreover, as the trial court articulates, Appellant's decision to advance to the buy site, discuss a purchase price, open his trunk, and reveal the rifle to Detective Legge, all was indicative of his intent to constructively possess the rifle. Accordingly, no relief is due.

In his next sufficiency sub-challenge, Appellant contends that the evidence was insufficient to show that he had the requisite mental state to commit an attempted sale or transfer of the firearms pursuant to 18 Pa.C.S. § 6111(a)(1), (a)(2), (c). In relevant part, § 6111 of the UFA provides:

> **(a) Time and manner of delivery.--**
>
> (1) Except as provided in paragraph (2), no seller shall deliver a firearm to the purchaser or transferee thereof until 48 hours shall have elapsed from the time of the application for the purchase thereof, and, when delivered, the firearm shall be securely wrapped and shall be unloaded.
>
> (2) Thirty days after publication in the Pennsylvania Bulletin that the Instantaneous Criminal History Records Check System has been established in accordance with the Brady Handgun Violence Prevention Act (Public Law 103-159, 18 U.S.C. § 921 et seq.), no seller shall deliver a firearm to the purchaser thereof until the provisions of this section have been satisfied, and, when delivered, the firearm shall be securely wrapped and shall be unloaded.
>
> . . . .

- 13 -

**(c) Duty of other persons.**--Any person who is not a licensed importer, manufacturer or dealer and who desires to sell or transfer a firearm to another unlicensed person shall do so only upon the place of business of a licensed importer, manufacturer, dealer or county sheriff's office, the latter of whom shall follow the procedure set forth in this section as if he were the seller of the firearm. The provisions of this section shall not apply to transfers between spouses or to transfers between a parent and child or to transfers between grandparent and grandchild.

18 Pa.C.S. § 6111.

Appellant contends that his § 6111 convictions cannot stand because there was never a sale of a firearm, since it was terminated before completion. *See* Appellant's brief at 46-47. However, Appellant was convicted of an **attempt** to violate § 6111, not the substantive offense. *See* N.T. Trial, 10/29/21, at 174-75 (announcing the verdict convicting Appellant of three attempted violations of § 6111). As noted above, the Commonwealth amended the criminal information pre-trial to reflect that the sale was not completed. *See* Oder, 7/2/21 (granting the Commonwealth's request to amend the criminal information to reflect that the § 6111 violations were attempt offenses).[7] "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step

_____

[7] The Commonwealth also withdrew three of the § 6111 offenses pertaining to the rifle, because it did not meet the barrel length requirements. *See* Pretrial Conference Hearing, 10/25/21, at 4; *see also* 18 Pa.C.S. § 6111(f)(2) ("The provisions contained in subsections (a) and (c) shall only apply to pistols or revolvers with a barrel length of less than 15 inches, any shotgun with a barrel length of less than 18 inches, and rifle with a barrel length of less than 16 inches or any firearm with an overall length of less than 26 inches).

- 14 -

toward the commission of that crime." 18 Pa.C.S. § 901(a). Thus, the Commonwealth was not required to prove that Appellant completed the unauthorized sale of a loaded firearm, but instead, that Appellant took a substantial step toward the commission of that crime. *Id*.

Detective Legge testified that Appellant told him he had guns for sale through the CI. *See* N.T. Trial, 10/27/21, at 160-61. Thereafter, Appellant drove his vehicle to the agreed-upon location, opened the trunk of his vehicle, and showed Detective Legge the firearms. While the CI was present, Appellant quoted Detective Legge $1,000 for both firearms. Detective Legge then removed the funds from his pocket and counted them in front of Appellant. Detective Legge observed that the firearms appeared to be loaded, which was confirmed during the later vehicle search. Further, Appellant did not require an application or an Instant Check for the sale, was not a licensed importer, manufacturer, dealer, or county sheriff, and the Harbor Freight parking lot was not the place of business of an authorized seller. Hence, the Commonwealth plainly proffered evidence that allowed the jury to conclude beyond a reasonable doubt that Appellant took a substantial step toward violating § 6111.

Appellant next levels a variety of attacks upon the validity of his convictions based upon the Commonwealth's failure to call the CI as a witness at trial. Appellant initially shoehorns the issue into his sufficiency challenges, with "the root of the insufficiency being the Commonwealth's failure to call

[the CI] in this matter at trial," maintaining that the CI's absence, paired with his own testimony explaining his innocence, entitles him to an arrest of judgment. Appellant's brief at 29-30.

Plainly, this argument suggests that we view the evidence in the light most favorable to Appellant, substituting our judgment for that of the fact-finder by accepting his self-serving testimony instead of the Commonwealth's evidence accepted by the jury. As this flies in the face of our standard of review of sufficiency claims, it is devoid of merit. *See Haahs*, *supra* at 104 n.2 (providing that, in reviewing a sufficiency claims, we view "all the evidence admitted at trial in the light most favorable to the verdict winner," and "we may not weigh the evidence and substitute our judgment for a fact-finder" (cleaned up)). As detailed above, the Commonwealth offered evidence from other witnesses that established each element of each crime. Hence, the evidence was sufficient without any testimony from the CI.

Appellant also alleges that his due process and confrontation clause rights were violated when the Commonwealth did not call the CI as a witness in its case-in-chief. *See* Appellant's brief at 47-57. He contends that "the Constitution does not appear to allow the Commonwealth to pick and choose which witnesses it wishes to produce for testimony at trial, nor allow them to abandon a material essential active participant and eyewitness such as [the CI]." *Id*. at 51. Appellant further contends that the trial court erred when it

failed to grant a continuance or give an adverse inference instruction due to the CI's absence. *Id*. at 48.

Appellant could not be more legally incorrect. First, Appellant supports his claim that the Commonwealth had a duty to call the CI with citation to cases that discuss no such obligation, but rather detail when and how a criminal defendant can compel the Commonwealth to disclose the identity of a CI. *See* Appellant's brief at 56 (citing **Commonwealth v. Baker**, 946 A.2d 691, 696 (Pa.Super. 2008) (reversing grant of suppression motion because the defendant failed to establish that the disclosure of the informant's identity would have been helpful to his case), and **Commonwealth v. Davis**, 465 A.2d 669, 673 (Pa.Super. 1983) (holding counsel was not ineffective for failing to move for the disclosure of the informant's identity)).

Appellant was aware of the identity of the CI well before trial. His counsel made the strategic decision not to proffer the testimony of either the CI or Ms. Gahagen, and therefore did not attempt to secure the presence of either witness. Appellant provides no authority to support a right to relief based upon the absence of witnesses whose presence he did not require or desire.[8] Appellant's complaints are not directed at the Commonwealth or trial

_____

[8] Appellant's requests to compel the CI to testify, and to continue the case so he could retain yet another lawyer who would secure the presence of the absent witnesses, were made *pro se* while he was represented by counsel and were thus legal nullities. **See**, **e.g.**, **Commonwealth v. Hopkins**, 228 A.3d 577, 580 (Pa.Super. 2020) ("As hybrid representation is not permitted in the
*(Footnote Continued Next Page)*

court in this direct appeal, but rather may be raised, if he so desires, as claims of ineffective assistance of trial counsel in a Post Conviction Relief Act petition.[9] ***See*** 42 Pa.C.S. § 9543(a)(ii).

Moreover, the Confrontation Clause gives criminal defendants the right to confront witnesses who testify against them, **not** the right to compel the government to call in their case-in-chief every witness who might have relevant information. ***See***, ***e.g.***, ***Commonwealth v. Allen***, 429 A.2d 1113, 1116 (Pa.Super. 1981) ("The Sixth Amendment right to confrontation extends only to witnesses whose testimony is presented. . . . [T]he Commonwealth

---

Commonwealth, our courts will not accept a *pro se* motion while an appellant is represented by counsel; indeed, *pro se* motions have no legal effect and, therefore, are legal nullities." (cleaned up)). Even if Appellant had attempted to secure the CI to testify, no relief would be due based upon the certified record before us. An adverse inference instruction is not warranted if the witness is not within the control of the party against whom the inference is sought or is equally available to both parties. ***See***, ***e.g.***, ***Commonwealth v. Crumbley***, 270 A.3d 1171, 1185 (Pa.Super. 2022). As the Commonwealth aptly observed, the disappearance of the CI is likely attributed to Appellant's choice to make a matter of public record not only the CI's identity, but also "his cooperation agreement, his record receipts, [and] his criminal records[.]" N.T. Trial, 10/28/21, at 75. In any event, the trial court determined that the CI was unavailable as a witness to any party, as neither the prosecution nor Appellant's counsel, or even the authorities in two other counties where the CI was subject to a bench warrant, had been able to locate him. ***See*** N.T. Trial, 10/26/21, at 19.

[9] Likewise, any claims about the court's failure to grant an adverse jury instruction were not preserved for our review and can be addressed only in the context of a collateral allegation of counsel's ineffectiveness for failing to preserve the issue. ***See*** Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.").

- 18 -

is not obligated to call the victim of a crime as a witness."). The only statements from the CI that were admitted at trial were bits of conversation between the CI and a police officer contained in the undercover recording of the incident in question, which, as Appellant acknowledges in his brief, **were introduced by Appellant**, not the Commonwealth. *See* Appellant's brief at 58. Appellant could not himself manufacture a Confrontation Clause issue by introducing what he now complains was inadmissible hearsay that the Commonwealth and trial court failed to object to on his behalf. *See id*. at 59. Again, if Appellant is unhappy with trial counsel's strategy, he may challenge it on collateral review.

Accordingly, we conclude none of Appellant's arguments related to the absence of witnesses that neither party called merits relief.

Appellant next claims that the trial court erred by not ruling that, as a matter of law, the evidence at trial established the defense of entrapment. Appellant explains that he testified that he was "tricked and induced by the CI in providing a ride to [sell] collectibles, premised on getting his money paid back to him." Appellant's brief at 67. Thereafter, the CI placed loaded firearms in his car under false pretenses and only informed him of the existence of the firearms once they were close to the location of the sale. *Id*. Since the CI did not testify, Appellant contends that his testimony alone was uncontradicted, and therefore, established the defense of entrapment as a matter of law. Accordingly, the court erred when it instructed the jury on

entrapment, rather than removing the matter from the jury's purview and concluding that Appellant established entrapment as a matter of law.[10] *Id*. at 68.

The Crimes Code defines the defense of entrapment in relevant part as follows:

> **(a) General rule**.--A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:
>
> > (1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
> >
> > (2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
>
> **(b) Burden of proof**.--Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S. § 313.

"The burden is on the defendant to establish entrapment and the inquiry focuses on the conduct of the police, not the predisposition of the defendant."

*Commonwealth v. Joseph*, 848 A.2d 934, 939 (Pa.Super. 2004).

> The test with regard to police conduct is an objective one. Merely affording the opportunity, through police artifice and stratagem, for the commission of a crime by a person who already has the

---

[10] "Our standard of review regarding questions of law is *de novo*." *Commonwealth v. Luczki*, 212 A.3d 530, 543 (Pa. Super. 2019).

requisite intent is not entrapment.  Rather, the defense of entrapment is aimed at condemning certain impermissible conduct which . . . falls below standards . . . for the proper use of governmental power.

*Id*. (cleaned up).  "Where police do no more than afford appellant an opportunity to commit an illegal act, their actions are not considered sufficiently outrageous police conduct to support an entrapment defense." *Commonwealth v. Marion*, 981 A.2d 230, 239 (Pa.Super. 2009) (cleaned up).

Where there is no dispute as to the "operative facts," the trial court may decide to reject or grant an entrapment defense as a matter of law.  *Id*. "Operative facts are those that are necessary for appellant to prove by a preponderance of the evidence that he was entrapped.  Under the objective test for entrapment, these would be facts that go to the course of conduct of a government officer or agent that would fall below standards to which common feelings respond, for the proper use of government power."  *Id*. (cleaned up).

Herein, the conduct of Detective Legge did not rise to the requisite level of outrageousness that would justify a finding of entrapment as a matter of law.  Detective Legge testified that he received a phone call from the CI informing him that Appellant was looking to sell two firearms for $1,000.  In contrast, Appellant contended that the CI intended to sell firearms without his knowledge.  Accordingly, operative facts were in dispute, and whether the police entrapped Appellant was a factual issue properly left to the jury to

resolve. The jury was entitled to believe Detective Legge's version of events, namely that he did not initiate the illicit sale, but merely posed as an interested buyer once he was informed of Appellant's desire to profit from the stolen firearms. Disbelieving Appellant's factual recitation, the jury could properly find that Detective Legge afforded Appellant the opportunity to follow through with a crime that he had himself formed the intent to commit. Thus, entrapment was not necessarily established.

Furthermore, even Appellant's self-serving version of events failed to establish his entrapment defense. According to Appellant, he was aware that he was driving to sell firearms before he arrived on site. However, rather than abandon the sale, Appellant put gloves on and proceeded to Harbor Freight. Appellant than walked to the back of his vehicle, opened the trunk, and revealed the firearms that were for sale to Detective Legge. Thus, the record does not reveal that law enforcement perpetrated an entrapment, but rather provided Appellant with an opportunity to commit a crime. Accordingly, the trial court properly left the entrapment issue to the jury.

Appellant's next claim fails for identical reasons. Appellant asserts that the Commonwealth violated his due process rights because there was no evidence adduced at trial proving that Appellant placed the firearms in the vehicle. *See* Appellant's brief at 70. Specifically, Appellant contends the Commonwealth engaged in "outrageous conduct" by spinning a web to ensnare Appellant using "stolen firearms, fabrications (need for a ride and to

sell collectibles), an uncontrolled buy, and with staged video evidence as a finale." *Id*. at 71-72.

"Due process, in the most general sense, protects individuals from oppressive or arbitrary governmental conduct." ***Commonwealth v. Bomar***, 104 A.3d 1179, 1209 (Pa. 2014) (citing ***Commonwealth v. Kratsas***, 764 A.2d 20, 27 (Pa. 2001)). To establish a due process violation based on "outrageous government misconduct," an appellant must prove that such conduct was "so grossly shocking and so outrageous as to violate the universal sense of justice." *Id*. (quoting ***Commonwealth v. Mance***, 619 A.2d 1378, 1381 (Pa.Super. 1993)). In ***Commonwealth v. Benchino***, 582 A.2d 1067 (Pa.Super. 1990), this Court explained further what types of outrageous government misconduct arise to a level implicating due process concerns:

> Before the conduct of law enforcement officials or government agents will be found to have violated due process, . . . it must be shown that police conduct was so grossly shocking and so outrageous as to violate the universal sense of justice. The establishment of a due process violation generally requires proof of government overinvolvement in the charged crime and proof of the defendant's mere passive connection to the government orchestrated and implemented criminal activity. Moreover, for due process to bar a conviction, the government's involvement in the commission of the crime must be *malum in se* or amount to the engineering and direction of the criminal enterprise from beginning to end.

*Id*. at 1069 (cleaned up).

Assuming *arguendo* that Appellant preserved this claim and that the conduct he alleges qualifies as outrageous,[11] the only evidence that suggests that the government engaged in any conduct different from what typically happens when trusted informants offer tips is Appellant's testimony about entrapment that was rejected by the jury. *Cf. Commonwealth v. Sun Cha Chon*, 983 A.2d 784, 789 (Pa.Super. 2009) (affirming the dismissal of charges that flowed from police funding and sending a CI into a massage parlor "on four occasions for a smorgasbord of sexual activity"). Thus, we conclude that no relief is due on Appellant's claim of outrageous government conduct.

In his penultimate issue, Appellant contends that the verdicts were against the weight of the evidence. The following law applies to our consideration of that claim:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

---

[11] The Commonwealth argues that the claim had to be preserved by raising it in a pretrial motion to dismiss. *See* Commonwealth's brief at 28-29 (citing, *inter alia*, *Commonwealth v. Butler*, 601 A.2d 268 (Pa. 1991)).

*Commonwealth v. Arias*, 286 A.3d 341, 352 (Pa.Super. 2022) (cleaned up). Accordingly, our task is to determine whether the trial court, in ruling on Appellant's weight challenge, "abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." *Commonwealth v. Clay*, 64 A.3d 1049, 1056 (Pa. 2013) (cleaned up).

Appellant argues that the verdict here was conscience-shocking based upon the CI-related issues already discussed, and that, in failing to overturn the verdict, the trial court committed an "abdication of its role as administrator of the evidence and overseer of a fair trial" and, thus, an abuse of discretion. Appellant's brief at 77. The trial court, having rejected Appellant's "prior arguments, that he was entrapped, framed, and prejudiced by everyone but himself" for the reasons discussed above, found its conscience unshocked by the jury's verdict. **See** Trial Court Opinion, 3/18/22, at 25. Since we observe no evidence that the trial court's conclusion was manifestly unreasonable, based upon an error of law, or otherwise informed by improper motives, we have no cause to disturb its ruling.

In his final claim, Appellant avers that trial court erred in rejecting his claim that the Commonwealth committed a violation of *Brady v. Maryland*, 397 U.S. 742 (1969). "This issue presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary."

*Commonwealth v. Bagnall*, 235 A.3d 1075, 1084 (Pa. 2020). Our Supreme

Court summarized the law governing *Brady* claims as follows:

> In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's *Brady* obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.
>
> On the question of materiality, the Court has noted that such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Thus, there are three necessary components that demonstrate a violation of the *Brady* strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued.

*Commonwealth v. Lambert*, 884 A.2d 848, 853-54 (Pa. 2005) (cleaned up).

Appellant contends that the Commonwealth refused to produce all text

messages between the CI and Detective Legge, and that the text messages

were exculpatory because they would support his entrapment defense at trial.

*See* Appellant's brief at 73. The trial court offered the following explanation

for rejecting Appellant's claim:

> [Appellant] has not demonstrated that the Commonwealth in fact had any text messages that were not provided. At trial, Commonwealth's proposed Exhibit 11 was text message records from the CI's phone, which [Appellant] received in discovery. He has not shown from the record that any other text messages exist or that other text messages would be exculpatory.

Trial Court Opinion, 3/18/22, at 20-21 (cleaned up).

We discern no error by the trial court. Detective Legge testified that he had communicated with the CI both through calls and text messages, and that his initial contact with the CI was through a phone call. *See* N.T. Trial, 10/27/21, at 149, 156. Hence, the testimony is not inconsistent with the quantity of text messages that the Commonwealth provided. Appellant has failed to point to any evidence of record that text messages beyond those produced to him in discovery even exist, let alone contained exculpatory information. Accordingly, the trial court properly denied Appellant's claim based upon purely speculative allegations of the existence of ***Brady*** material.

For the aforementioned reasons, we conclude that none of the issues Appellant has presented to this Court merits relief. Therefore, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2023

- 27 -